Opinion issued November 20, 2003 








     






In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00691-CV




TERRY JOE ADAMS, JR., Appellant

V.

CLIFF DOWNEY, Appellee




On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 13354*JG00




O P I N I O N

          Appellant, Terry Joe Adams, Jr. (“Adams”) challenges the summary judgment
granted by the trial court in favor of appellee, Cliff Downey (“Downey”). The
summary judgment was granted on basis of official immunity. Because we hold that
Downey did not conclusively establish good faith, a necessary element of official
immunity, we reverse the trial court’s summary judgment and remand for further
proceedings.
Background Facts 
          As coordinator for the Alvin Community College Police Academy (“the
academy”), Downey was responsible for administering and conducting the daily
operations of the academy. Downey’s duties included planning and administering
training scenarios for the police cadets attending the academy. These training
scenarios are known in law-enforcement vernacular as “close training exercises.” The
close training exercises simulate real-life situations that a police officer may
experience in the field. The close training exercises often provide a cadet with the
only practical experience that he may receive before being sent into the field as a
police officer.
          On April 10, 1999, Adams, who was a cadet at the academy, participated in
various close training exercises. While participating in these exercises, the cadets
carried handguns loaded with blank rounds. Downey had decided to put blank rounds
in the cadets’ handguns to add an element of realism to the training exercises. 
Downey selected Jesse Harris (“Harris”), an academy graduate and licensed peace
officer, to oversee the cadets during the scenarios that day. 
          At the end of the last training exercise, Adams was in the process of
handcuffing a “suspect” when Harris criticized Adams for standing in such a way that
would allow the suspect to grab Adams’s handgun from his holster. Harris proceeded
to demonstrate how easily the suspect could have grabbed the firearm from Adams. 
During the demonstration, and while Harris had Adams’s handgun, the handgun
discharged, shooting Adams in the face. 
Procedural History
          Adams survived his injuries and filed suit against Downey, Harris, and two
other employees of the academy, Ron Gilstrap and D.A. Miller. In his second
amended petition, Adams alleged that the following acts and omissions of Downey
constituted negligence: (1) authorizing the use of blanks for close training exercises;
(2) failing to require students to wear protective eyewear; and (3) authorizing Harris,
an individual without any firearms-instructor training, to supervise a scenario
involving firearms. Adams alleged that he suffered severe injuries to his eyes and
face as a result of Downey’s acts and omissions. 
          Downey, Gilstrap, and Miller moved for summary judgment, asserting two
grounds: (1) Adams’s claims were barred by a release signed by Adams and (2) the
defendants were entitled to official immunity from Adams’s claims. Before the trial
court considered the motion for summary judgment, Adams agreed to dismiss
defendants Gilstrap and Miller.


 Thus, when the trial court heard the motion for
summary judgment, it was related to Adams’s negligence claims against Downey
only. 
          Following a hearing, the trial court expressly granted the motion for summary
judgment on the basis of official immunity. The trial court expressly denied the
motion on the basis that Adams had released his claims against Downey. The trial
court also granted a motion to sever Adams’s claims against Downey, making the
summary judgment final.


 In a single issue on appeal, Adams complains that the trial
court erred in granting Downey’s motion for summary judgment on the ground of
official immunity.
Standard of Review
          In a summary judgment case, the issue on appeal is whether the movant met his
summary judgment burden by establishing that no genuine issue of material fact
exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P.
166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d
746, 748 (Tex. 1999); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979). In reviewing a summary judgment, we accept as true all evidence
supporting the non-movant, indulge every reasonable inference in favor of the
nonmovant, and resolve any doubts in the non-movant’s favor. Tex. R. Civ. P.
166a(c); Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Gidvani v.
Aldrich, 99 S.W.3d 760, 762-63 (Tex. App.—Houston [1st Dist.] 2003, no pet.). To
be entitled to summary judgment on an affirmative defense such as official immunity,
a defendant must conclusively prove all the elements of the defense. Univ. of
Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000); Gidvani, 99 S.W.3d at 763. 
Official Immunity
          As a governmental employee, Downey was entitled to official immunity (1) for
the performance of discretionary duties, (2) within the scope of his authority, (3) for
acts he performed in good faith. Clark, 38 S.W.3d at 580. No dispute exists whether
Downey’s conduct in planning and administering the close training exercises
occurred within the scope of Downey’s authority as coordinator of the academy and
during the performance of discretionary duties. Rather, the issue presented is whether
Downey conclusively established, as a matter of law, that he acted in good faith.
Good Faith
          To establish good faith as a matter of law, Downey is required to show that a
reasonably prudent coordinator, under the same or similar circumstances, could have
believed that loading the cadets’ handguns with blanks, failing to require the cadets
to wear protective eyewear, and selecting Harris to oversee the cadets, was justified
based on the information he possessed. See Telthorster v. Tennell, 92 S.W.3d 457,
465 (Tex. 2002). Downey is not required to show that the only reasonable manner
to plan and administer the close training exercises is the manner that he did, or that
all reasonably prudent coordinators would have acted as he did. See id. Rather, he
must prove only that a reasonably prudent coordinator, under similar circumstances,
might have decided to plan and administer the close training exercises as he did. Id. 
Even if Downey acted negligently, good faith is not defeated. Id. The test is not
“what a reasonable person would have done,” but “what a reasonable [coordinator]
could have believed.” Id. In conducting our review, we must measure good faith in
official immunity cases against a standard of objective reasonableness, without regard
to the official’s subjective state of mind. City of Lancaster v. Chambers, 883 S.W.2d
650, 656 (Tex. 1994); Gidvani, 99 S.W.3d at 764. Only if Downey meets his burden
of proof on good faith does the burden shift to Adams to produce controverting
evidence—that is, Adams then must show that no reasonable person in Downey’s
position could have thought the facts were such that they justified Downey’s conduct. 
Chambers, 883 S.W.2d at 656-57.
          In this case, contradictory evidence related to the material facts underlying
Downey’s claim of good faith exists in the record. The parties dispute the material
facts related to (1) Downey’s assignment of Harris to oversee the close training
exercises, (2) Downey’s decision to load the cadet’s handguns with blanks, and (3)
Downey’s failure to require the cadets to wear protective eyewear during the training
exercises. 
          Downey offered both his own deposition testimony and that of Adams in
support of his motion for summary judgment. In his deposition, Downey testified
that, before the training exercises began, he instructed the cadets that their firearms
were not to be discharged and that a training exercise would be stopped if a weapon
was drawn. In contrast, Adams testified that Downey told the cadets on the morning
of the training exercises that they could discharge their weapons.


 Specifically,
Adams stated that Downey told the cadets that they could “shoot the perpetrator,” but
that the cadets were to “keep it below the chest and face area.” 
          The parties do not dispute that Downey selected Harris to be an “evaluator” of
the cadets for the close training exercises. But conflicting proof exists in the record
whether, as an evaluator, Harris was permitted to engage in instruction of the cadets. 
          In his deposition, Downey testified that he selected Harris to evaluate the
cadets’ performance during the training exercises. According to Downey, it was
Harris’s task to observe the cadets during the exercises and fill out evaluation forms
regarding the performance of the cadets. Downey testified that he instructed Harris
that “basically his task was to do the evaluation.” In the event that a fight occurred
between the cadets or a cadet pulled a firearm, Harris was also charged with stopping
the training exercises. When Downey was asked whether Harris was to instruct the
cadets, Downey stated, “no,” and that he had “intended” that the cadets’ instructor,
Captain Terry Lucas, would review the evaluation forms with the cadets at a later
time. 
          In his motion for summary judgment, Downey asserted that he “instructed
Harris” that he was “not to provide instruction to the cadets.” (Emphasis in original.) 
However, Downey cited no record reference in support of this assertion. The pages
of Downey’s deposition offered in support of his motion for summary judgment
reveal no testimony by Downey that he affirmatively told Harris not to engage in
instruction of the cadets. Downey’s bare assertion in his motion for summary
judgment does not constitute summary judgment proof, and cannot support summary
judgment. See Madeksho v. Abraham, Watkins, Nichols & Friend, 57 S.W.3d 448,
455 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (noting conclusions in
motion for summary judgment or response are not summary judgment evidence). 
          Moreover, summary judgment evidence exists in the record from which a
reasonable inference could be made that Harris’s duties as evaluator entailed more
than mere evaluation. Adams testified that the cadets had been told that there would
be a police officer at each training exercise “overseeing the scenario.” Here, the
police officer “overseeing the scenario” was Harris. A reasonable inference can be
made that the word “overseeing” connotes more than merely evaluating the
performance of the cadets.
          In addition, Harris’s deposition testimony, which was attached to Downey’s
motion for summary judgment, supports the inference that Harris’s role as an
evaluator included instruction of the cadets. In his deposition, Harris explained that
Adams’s failure to secure his weapon during the mock arrest was a mistake that could
have cost Adams and his partner their lives. Harris testified that it was his “job” to
(1) “point those things out,” i.e., safety concerns, to the cadets, (2) prevent the same
mistakes from being made in the future by the cadets, and (3) teach the cadets “the
right thing to do.” It was for those reasons that Harris showed the cadets how easily
a suspect could take Adams’s handgun. The capacity in which Harris acted, either
as an instructor or mere evaluator, relates to his qualifications and whether Downey
acted in good faith in assigning him in that capacity based on those qualifications.
          To establish that he acted in good faith, with regard to planning and
administering the close training exercises, Downey offered the expert affidavits of
Mike Jez, a law enforcement officer who served as a chief of police in Alvin and
Denton, Texas, and Maurice Cook, former chief of the Texas Rangers. Based on their
extensive experience training police officers, both Jez and Cook concluded that
Downey acted reasonably and appropriately when Downey decided that blanks should
be used in the cadets’ handguns and failed to require that the cadets wear protective
eyewear. However, Jez’s and Cook’s affidavits neglected to address the facts in the
light most favorable to Adams. To the contrary, the affidavits reveal that the two
experts relied on Downey’s controverted version of the facts as the basis for their
conclusions. In forming their expert opinions, Jez and Cook each presumed that the
cadets were instructed by Downey to not draw or fire their weapons. 
          Jez and Cook also concluded that Downey acted reasonably in his selection of
Harris as an evaluator. On this point, Jez relied on Downey’s unsupported assertion
that Downey had told Harris not to instruct the cadets. Specifically, Jez opined that
it was not unreasonable for Downey to select Harris as an evaluator “in light of Mr.
Downey’s instructions to Mr. Harris that he was not to engage in any actual
instruction of the cadets.” 
          In his affidavit, Cook concluded that it was reasonable for Harris to serve as
an evaluator. However, Cook failed to articulate whether or not he premised his
opinion on the belief that Harris could instruct the cadets as part of his duties as
evaluator. Thus, Cook’s affidavit does not demonstrate that he viewed the facts in the
light most favorable to Adams when he rendered his opinion on this point.
          In sum, neither Jez nor Cook rendered an expert opinion based on Adams’s
version of the facts; that is, Downey’s experts do not address the facts in the light
most favorable to Adams. We leave to the fact finder the determination of whether
Downey’s or Adams’s version of the facts is the correct one. In that respect, our job
is easier than that of the fact finder because we must take Adams’s assertions on
material facts as true and indulge all inferences from that evidence in his favor. 
Grinnell, 951 S.W.2d at 425. 
          This Court, and other Texas courts, have held that a movant on summary
judgment fails to conclusively establish good faith when the material facts relied on
to support good faith are in dispute. See Roberts v. Foose, 7 S.W.3d 311, 315 (Tex.
App.—Houston [1st Dist.] 1999, no pet.) (concluding officer could not establish good
faith when factual dispute existed on whether plaintiff resisted arrest); see also
Kistner v. Pfannstiel, 107 S.W.3d 7, 11-12 (Tex. App.—San Antonio 2002, no pet.)
(holding summary judgment improper on good faith ground when contradictory proof
introduced as to whether officer was justified in arresting plaintiff); Hayes v. Patrick,
45 S.W.3d 110, 118 (Tex App.—Fort Worth 2000, pet. denied) (concluding game
warden could not prove good faith when factual dispute existed as to facts leading up
to investigatory stop of water craft); City of Dallas v. Aguirre, 977 S.W.2d 862, 864
(Tex. App.—Dallas 1998, no pet.) (holding officer could not establish good faith
when factual dispute existed on whether plaintiff was fleeing police). Similarly, at
least two of our sister courts have held that an official fails to conclusively establish
good faith when the official’s motion for summary judgment relies on expert
affidavits that do not address the facts in the light most favorable to nonmovant
plaintiff. See Kistner, 107 S.W.3d at 12-13 (concluding expert affidavits not
dispositive of officer’s good faith because experts did not base opinions on facts
addressed in light most favorable to plaintiff); City of Houston v. Davis, 57 S.W.3d
4, 7 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (noting affidavits of other
officer and experts regarding good faith only addressed offending officer’s version
of facts and thus were not in light most favorable to plaintiff); Bridges v. Robinson,
20 S.W.3d 104, 112-13 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding that
officers’ expert affidavits that addressed their own version of facts and ignored
contradictory and other damaging proof failed to establish good faith), overruled, in
part, on other grounds by Telthorster, 92 S.W.3d at 464. We agree with the
reasoning of these opinions.
          Because of the existence of contradictory proof on the material facts and
Downey’s failure to address the facts in the light most favorable to Adams, we hold
that Downey failed to meet his summary judgment burden to conclusively establish 
his good faith.


 Because we hold that Downey failed to conclusively prove he acted
in good faith in planning and administering the close training exercises, we also hold
that Downey failed to prove the defense of official immunity as a matter of law. 
          We sustain Adams’s sole issue.
Conclusion
          For the reasons stated in this opinion, we reverse the judgment of the trial court
and remand the cause for further proceedings.




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Hedges, Nuchia, and Higley.